UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **1:15-cv-23873- Moore/McAiley**

RENZO BARBERI,

    Plaintiff,

vs.

PEGO INTERNATIONAL CORP.,
a Florida Profit Corporation, d/b/a
PEGO LAMPS, and REINALDO PEREZ
and ZOILA PEREZ

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND APPLICATION FOR ATTORNEY'S FEES, COSTS, EXPERT WITNESS FEES AND LITIGATION EXPENSES AND MEMORANDUM OF LAW**

The Plaintiff, RENZO BARBERI, by and through his counsel, pursuant to the provisions of Rule 55(b) of the Federal Rules of Procedure, moves this Court to enter Judgment after Default against the Defendants, PEGO INTERNATIONAL CORP., d/b/a PEGO LAMPS, REINALDO PEREZ and ZOILA PEREZ, and further seek attorney fees, costs, litigation expenses and expert fees.

**SUMMARY CASE STATEMENT**

This is an action for injunctive relief and attorneys' fees and costs pursuant to 42 U.S.C. §12181, et seq. ("Americans With Disabilities Act" or "ADA"). Defendants were duly served with process and, when no response was forthcoming, a Default was entered against Defendants on April 12, 2016 [DE 19, 20, 21]. To date, there has been no response from Defendants.

The Plaintiff now requests the Court enter Judgment on that default awarding the relief afforded by the ADA. In addition, he also seeks his attorneys' fees, costs, litigation expenses and

expert fees.

## THE APPLICATION OF THE CONTROLLING LAW

### I. PLAINTIFF IS ENTITLED TO DEFAULT JUDGMENT

This Court has original jurisdiction over the action pursuant to 28 U.S.C. §1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. §12181, et seq., based on Defendants' violations of Title III of the Americans With Disabilities Act (*see also,* 28 U.S.C. §2201 and §2202).

Pursuant to the provisions of Rule 55 of the Federal Rules of Civil Procedure, when a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by the Rules of Civil Procedure, such as the Defendants in this action, a default shall be entered against that party. Thereafter, a default judgment shall be entered by the court against the defendant, based upon evidence provided by a supporting affidavit and/or hearing if necessary.

On July 26, 1990, Congress enacted the Americans With Disabilities Act, and established January 26, 1992, as the date when all public accommodations had to comply therewith. 42 U.S.C. §12181; 28 CFR §36.508(a) (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less). Under either scenario, the Defendants' deadline for compliance has long passed.

The premises which are owned and/or operated by Defendants, and which is the subject of this action is a lighting store located at 5407 SW 8th Street, Miami, Florida (hereinafter the "subject property" or the "facility"), must be accessible by individuals with disabilities. Pursuant to 42 U.S.C. §12181(7); 28 CFR §36.104, the facility which is the subject of this action is a public accommodation covered by the ADA and which must be in compliance therewith.

Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the

requirements of the ADA. 28 CFR Part 36. Defendants, are in violation of 42 U.S.C. 12181 et seq., and 28 CFR 36.302 et seq., and are discriminating against the Plaintiff. The discrimination is based on the Defendants denying Plaintiff full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations as prohibited by 42 U.S.C. §12182 et seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. §12182(b)(2)(A)(iv), where such removal is readily achievable.

Pursuant to 42 U.S.C. 12188(a)(2), this Court is provided authority to grant Plaintiff injunctive relief, including an Order to alter the subject facilities to make them readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the subject facilities until the requisite modifications are completed. In *Access 4 All, Inc. v. Ulster Heights Properties, Inc.*, 2009 WL 256008 (S.D.N.Y. February 2, 2009), the Southern District of New York addressed the relief to which a plaintiff is entitled in the wake of a default. These include the entry of judgment mandating that the defendant bring its facility into full compliance with the ADA.

Because of the default, the Defendants have admitted the well pleaded allegations of the complaint. *Cotton v. Mass. Mutual Life Inc. Co.*, 402 F3d 1267, 1277-78 (11th Cir. 2005) (citations omitted). In addition, the Plaintiff retained Mr. Jon Kronillis as an expert to perform an initial evaluation of the Defendants' facilities. Mr. Kronillis's affidavit is appended to this Motion and identified as Exhibit "A." Exhibit "A" also includes his resume and preliminary inspection report describing the deficiencies that existed at the Defendants' facilities. More specifically, the Defendants' facilities do not comply with the requirements of the ADA and the regulations promulgated thereto in the following particulars:

**PARKING AREA**

1. The existing parking facility for the business does not provide a compliant disabled parking space. 2010 ADA Standards 208.2, 502.1
2. Disabled parking space striping is incorrect as per 2010 ADA Standards 501.1
3. The existing disabled parking space exceeds 2% rise and slope in all directions in violation of 2010 ADA Standards 502.4.
4. The parking facility does not have a compliant access aisle to allow a disabled passenger to enter or exit vehicle safely. 2010 ADA Standards 502.3
5. There is currently no existing accessible route to help persons with disabilities safely maneuver through the parking facility as required in 2010 ADA Standards 502.3
6. There is no compliant curb ramp necessary to gain access to the sidewalk leading to the business front entrance.  2010 ADA Standards 2010 ADA Standards  303.1, 403.2
7. The existing curb ramp exceeds the maximum running slope allowed. 2010 ADA Standards 405.2
8. The existing asphalt curb ramp protrudes into the vehicular pathway in violation of 2010 ADA Standards 502.3.4

**ACCESSIBLE ELEMENTS**

1. The facility does not provide compliant directional and informational signage to an accessible entrance. 2010 ADA Standards 216.6
2. There is no signage addressing people with disabilities telling them that accessible services are provided. 2010 ADA Standards 216.3, 703.5

In each instance, the cited ADAAGs list the specific things that must be done to bring the property into compliance. Mr. Kronollis states that, without taking into account, Acts of God, delays during the permitting process and similar things, six to nine months should be sufficient to bring the property into compliance. See Exhibit "A".

In *Houston v. South Bay Investors,* Case No. 9:13-CV-80193-DTKH (S.D. Fla. July 25, 2013), the Court found that the requested injunctive relief is appropriate based on an affidavit of an ADA expert which included violations that the expert encountered and an estimated time to bring the property into compliance. In the instant action, based on the same evidence, injunctive relief is also appropriate.

## II. A PREVAILING PLAINTIFF IS ENTITLED TO THEIR ATTORNEY FEES, COSTS, LITIGATION EXPENSES AND EXPERT FEES

Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action, and has incurred attorneys' fees, including costs, litigation expenses and expert's fees and costs. Plaintiff is entitled to recover those attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. §12205. In the instant action, and as a result of the default, the Plaintiff is the prevailing party under *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001). For that reason, and under 42 U.S.C. 12205, the Plaintiff is entitled to recover his attorneys' fees, expert fees, litigation expenses and costs.

### A. Calculating Attorneys Fees

In a civil rights case, the amount of an award of attorneys' fees is calculated by determining the reasonable hourly rate for the legal services involved and multiplying that rate by the number of hours reasonably expended. *See, Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Factors to be considered when setting a fee include: (A) the amount involved and the results obtained; (B) the time and labor required; (C) the novelty and difficulty of the issues; (D) the skill required to perform the legal services properly; (E) the preclusion of other employment; (F) the customary fee; (G) whether the fee is fixed or contingent; (H) the time limitations imposed by the client or circumstances; (I) the experience, reputation and ability of the attorneys; (J) the undesirability of the case; (K) the nature and length of the professional relationship with the client; and (L) awards in similar cases. *Hensley, supra*, p. 429-430, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

**1. The Results Obtained.**

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445(1983). Where the ADA is concerned, "private enforcement suits are the primary method of obtaining compliance with the Act," *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008); *Doran, v. 7-Eleven, Inc.,* 524 F.3d at 1041(same). Because of the importance of the federal rights private enforcement actions vindicate, such actions are, as the Supreme Court noted, "private in form only." *Guardian Ass'n v. Civil Service Comm'n*, 463 U.S. 582 (1983). In *Villano v. Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) the Eleventh Circuit held that "successful civil rights actions vindicate a public interest ...[and] [p]ublic benefit is a distinct measure of success in civil rights actions and ... a court must account for that distinct measure of success when calculating an award of fees and costs."

As the result of this lawsuit, the Plaintiff shall obtain significant beneficial results which substantially increase the accessibility of Defendants' facility to wheelchair disabled individuals.[1]

**2. The Experience, Reputation, and Ability of the Attorneys.**

Plaintiff's attorney has significant litigation experience in both Federal and State Court and have significant experience in civil rights cases, including ADA Title III litigation.

Ronald Stern has approximately eleven (11) years of experience as an attorney. He was admitted to practice in Florida in 2005. He is also admitted to practice before the United States District Court for the Southern District of Florida; the United States District Court for the Middle District of Florida; and the United States District Court for the Western District of Texas. Mr. Stern concentrates his practice in representing disabled plaintiffs in ADA cases and has handled

---

[1] This is a suit for injunctive relief and no monetary damages are sought. Therefore, the "amount involved" is inapplicable as a factor in this action.

literally hundreds of actions seeking to address ADA violations.

**3. The Time and Labor Required.**

Appended to this motion and identified as Exhibit "B," is a copy of the time records of Plaintiff's counsel documenting the time and effort which was required to obtain the resolution of this case.

In addition, the time expended by Plaintiff's counsel in drafting this motion is included. In general, time incurred by Plaintiff's counsel in filing, preparing and litigating this fee application and any fee hearings thereon is compensable. *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *Guerrero v. Commings*, 70 F.3d 1111 (9th Cir. 1995); *Davis v. City and County Of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2nd Cir. 1995); *Barlow-Gresham Union High School District No. 2 v. Mitchell*, 940 F.2d 80 (9th Cir. 1991); *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978); *Gagne v. Maher*, 594 F.2d 336 (1979); *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979); *Prandini v. National Tea Company*, 585 F.2d 47 (3d Cir. 1978).

As set forth in Exhibit "B," Plaintiff's counsel spent 15.4 hours working on this case. In addition, there was 1.2 hours of paralegal time involved. Furthermore, the amounts in Exhibit B do not account for much time which was spent on conversations with the client, numerous attempts to contact the Defendants and their architect, and any attorney time and costs which shall be expended on post-judgment collection efforts such as recording fees. The time spent was reasonable and necessary to bring this matter to conclusion with the beneficial results obtained.

**4. The Novelty And Difficulty Of The Questions Presented And The Skill Requisite To Perform The Legal Service Properly**

It is estimated that there are very few firms nationwide that litigate Title III ADA claims. Effective representation of plaintiffs in ADA actions requires not only sophisticated general litigation skills, such as familiarity with the rules of evidence and procedure, but, in addition, presents numerous issues regarding entitlement to injunctive relief, Article III standing, barriers to access, undue burden, exemptions, new construction and alterations versus pre-ADA construction, extensive knowledge of the ADAAGs (relevant ADA accessibility guidelines), the Technical Assistance Manual and a multitude of other guides issued by the Department of Justice, the extensive body of case law issued by the courts nationwide, and finally whether remedial measures are "readily achievable." In addition, it is not unusual for Plaintiff's attorneys to find themselves opposed by the resources of corporate defendants.

For those reasons, the Plaintiff submits that the novelty and difficulty of the issues presented in ADA actions, and the skill requisite to properly address such issues, justify a higher rate than many other areas of practice.

**5. The Preclusion Of Other Employment Due To Acceptance Of The Case And The Undesirability Of The Case**

As noted above, the United States Supreme Court, has recognized that civil rights advocates as "private attorney generals." *See e.g., Hensley*, 461 U.S. at 445. The primary, and perhaps singular, reason public places are beginning to comply with the 20-year old obligations of the ADA is because of private enforcement suits. See, *Antoninetti v. Chipotle Mexican Grill, Inc.*, 613 F. 3d 971, 980 (9th Cir 2010), *cert. denied*, *Chipotle Mexican Grill, Inc., v. Antoninetti*, 2011 WL 645276 (79 USLW 3514, April 18, 2011). That notwithstanding, the efforts of

individuals such as the Plaintiff and the attorneys who represent the disabled are "not pleasantly received," *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). As another court was far more blunt in describing the reaction as one of "vitriolic hostility." *Mallory v. Harkness*, 923 F.Supp. 1546, 1555 (S.D. Fla. 1996).

Because of the negative publicity and attitude that many have toward Title III ADA actions, Plaintiff's counsel are predictably precluded from other employment based on acceptance of the case. For instance, it is highly unlikely that a Plaintiff's lawyer would attract business clientele. It has been recognized that civil rights plaintiffs' work is oftentimes undesirable, and that plaintiffs' attorneys are economically impacted by their decision to help the civil rights litigant. As explained in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974):

> "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court."

Additionally, in the instant case, the Plaintiff's rights, and those of all wheelchair bound individuals, were vindicated by counsel working on this case, the time which could have been spent on other matters.

**6. The Reasonable Hourly Rate, the Customary Fee And Fees Awarded In Similar Cases**

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable, comparable skills, experience and reputation. *See, Marisol A. v. Giuliani*, 111 F. Supp.2d 381 (S.D.N.Y.2000). The relevant community to which the Court should look is the District in which the case was brought. *Patrolmen's Benevolent Assn of the City of New York, Inc. v. The City of New York*, 2003 WL 21782675 (S.D.N.Y. 2003); *AR*

*v. New York City Department of Education*, 407 F.3d 65 (2d Cir 2005); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, 2005 WL 3338555 (S.D.N.Y. 2005).

In determining the reasonableness of the fees and hourly rate, it is appropriate to consider rates awarded in other cases. Because the attorney compensation is based on contingency, and payment has not been made, courts award the current prevailing market rate. The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed. This takes into account the delay in payment. *Lanni v. State of New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001). Additionally, in considering the rates awarded in prior cases, courts adjust rates upward to account for inflation. It is especially important in this case, which has been in litigation for months, without the Plaintiff's counsel having received any payment to date.

Closer to home, in the 2013 case of *Houston v. Arshak Corp.*, 0:13-cv-60752 (S.D. Fla. 2013), plaintiff's counsel was awarded $420.00 per hour in a case that, like this one, involved a clerk's default [DE 15 & 17]. In *Access 4 All, Inc. v. The TJX Companies, Inc.*, Case No: 9:11-cv-80109 (S.D. Fla.), counsel for the defendant represented to the Court that $450.00 per hour was the rate for "senior" attorneys. [DE 30, at 11-12]. In *Houston v. South Bay Investors,* Case No. 9:13-CV-80193-DTKH (S.D. Fla. July 25, 2013), the Court found that the Plaintiff's requested hourly rate of $420.00 was "reasonable in light of counsels' experience and citation to other cases in this district wherein the courts approved an identical rate." In recent Middle District, cases, attorneys have stated, under oath, that $400.00 per hour is reasonable, *Access for the Disabled, Inc., v. Associated Outdoor*, 8:13-cv-100-UMC (M.D. Fla. 2013) [DE 22] as is $825.00 per hour. *Harty v. Mal-Motels, Inc.*, 6:10-cv-1333 (M.D. Fla. 2013)[DE 64-1 & 65]. Particularly in view of the statements in the latter two cases, and the fact that the Plaintiff was represented on a contingent fee basis, $375.00 per hour for the services of the Plaintiff's counsel

is low and thus more than reasonable. In earlier cases, courts have awarded the Plaintiff's counsel $385 per hour in a Title III ADA case, *Steven Brother v. BFP Investments, Ltd.*, Case No. 03-10129-civ-Marra/Dube (S.D. Fla. 2005).

Courts in other jurisdictions have also approved rates ranging from $350 to $430 per hour in similar types of litigation. For example, in *Rodriguez v. McLoughlin*, 84 F.Supp.2d 417 (S.D.N.Y. 1999), the Court awarded the supervising attorney in a civil rights action $425 per hour. In *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 211-12 (S.D.N.Y. 2001), the court approved rates up to $390 an hour for senior attorneys in a civil rights case. In *Marisol A. ex rel Forbes v. Giuliani*, 111 F.Supp.2d 381 (S.D.N.Y.2000), the Court awarded civil rights attorneys up to $390 per hour. Additionally, in *Skold v. American Int'l Group, Inc.*, 1999 WL 405539 at 6-7 (S.D.N.Y. June 18, 1999), the Court held that a rate of $400 for an experienced civil rights litigator was reasonable. Further, hourly rates in the three to four hundred dollar range are not limited to large firms. *New York State NOW v. Pataki*, 2003 WL 2006608, at 2 (S.D.N.Y. Apr 30, 2003)(approving a rate of $430 an hour for a small civil rights litigator).

The Plaintiff in the instant action is seeking $375.00 per hour for attorney's time. In addition, the Plaintiff seeks paralegal fees at the rate of $110 per hour.[2]

**7. Whether The Fee is Fixed or Contingent**

The fee in the instant action is contingent. In fact, Plaintiff's counsel has incurred significant expenses. Moreover, there is no certainty that Plaintiff's counsel will receive any compensation at all. Therefore, in setting a reasonable hourly rate, Plaintiff submits that this Court should award the higher range of rates to account for the length of time and uncertainty that counsel will be paid at all.

---

[2] e.g., ABC Charters, Inc., v. Bronson, 2010 WL 1332718 (S.D. Fla. March 16, 2012) ($125.00 reasonable rate for paralegal services); *Houston v. South Bay Investors,* Case No. 9:13-CV-80193-DTKH (S.D. Fla. July 25, 2013), ($115.00 reasonable rate for paralegal services)

11

**8. The Time Limitations Imposed by the Client or Circumstances**

Because the barriers to access complained of by Plaintiff restricted and/or limited Plaintiff's access to the subject Facility, time was of the essence. Every day that passed while the undersigned did not work on the case and make every effort to expedite its resolution, by pursuing litigation, was another day that the Facility would remain inaccessible.

**9. The Nature and Length of the Professional Relationship with the Client**

Ronald Stern has represented Plaintiffs and Defendants in several other actions, and has a continuing relationship with the clients, including Plaintiff in this particular action. This has led to increased efficiency in the prosecution of this litigation.

**B. Expert Fees, Costs and Litigation Expenses**

A prevailing party is entitled to costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. These costs are defined by 28 U.S.C. § 1920, which provides for recovery of, *inter alia*, (1) fees of the Clerk and process server; (2) court reporter fees "for all or any part of the stenographic transcript obtained for use in the case"; (3) fees for printing and witnesses; (4) fees "for exemplification and copies of papers necessarily obtained for use in the case"; and (5) docket fees. Additionally, in civil rights actions, a prevailing party may recover expenses not normally available under § 1920. See *Dowdell v. City of Apopka*, 698 F. 2d 1181, 1189-92 (11th Cir 1983). Such additional expenses cover "with the exception of routine overhead, normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of the settlement of the case." *Id*. at 1192. *Dowdell* reversed the lower court for its refusal to tax travel, telephone and postage expenses as costs. Courts routinely grant to the prevailing party the cost of the filing fee incurred in bringing a lawsuit. *See, e.g., James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 652 (S.D. Fla.2007). Service

of process fees paid to private process servers are taxable so long as the amount does not exceed the amount charged by the U.S. Marshals Service. *E.E.O.C. v WO*, 213 F.3d 600, 624 (11th Cir. 2000). In this action $40.00 service fee per defendant should be a recoverable taxable fee.

Generally, absent express statutory authority, the reimbursement for expert witness fees under 28 U.S.C. § 1920(3) is limited, as it is for all witnesses, by the provisions of 28 U.S.C. §1821(b). *Crawford Fitting Co. v JT Gibbons*, 482 U.S. 437, 442 (1987). However, the ADA is one of those statutes that allows for the recovery of expert witness fees. As another court facing this issue noted:

> The ADA authorizes a court to award attorneys′ fees, litigation expenses, and costs to a prevailing party. See 42 U.S.C. § 12205; see also 28 C.F.R. § 35.175. The preamble to the ADA Title II regulations explains that "[l]itigation expenses include items such as expert witness fees, travel expenses, etc." 28 CFR Pt. 35, App. A, Section–by–Section Analysis, §35.175. This construction of the statute is consistent with its legislative history. According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101–485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses to include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney′s fee provision."); H.R. Rpt. No. 101-485(II) at 140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits.").

*Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002); *see also Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) ("A prevailing ADA plaintiff may recover expert fees as a litigation expense.") (internal citation omitted).

In *Davis v. Mason County*, 927 F. 2d 1473, 1488 (9th Cir. 1991), the Ninth Circuit discussed the recovery of travel expenses under 42 USC 1988,

13

"Mason County fails to see that like the expert witness fees, the travel expenses were not granted as costs under section 1920, but rather as out-of-court expenses compensable under section 1988. Courts have generally held that expenses incurred during the course of litigation which are normally billed to fee-paying clients should be taxed under section 1988. *Dowdell, supra* at 1190, *Palmigano v. Garraby*, 707 F. 2d 636,637 (1st cir 1983); *Northcross v. Board of Education*, 611 F. 2d 624, 639 (6th Cir. 1979); cert. denied, 447 U.S. 911 (1980). As the Eleventh Circuit said in Dowdell:

"Reasonable attorney's fees' under the (Attorney's Fee Awards) Act must include reasonable expenses because attorney's fees and expenses are inseparably intertwined as equally vital components of the cost of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenses which maybe essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award accordingly. Thus, following the reasoning adopted in upholding the award of expert witness fees, we also affirm the district courts award of travel expenses pursuant to section 1998."

Plaintiff's expenses are fully itemized in Exhibit "B."

Also included in Exhibit "B" is a $500.00 reinspection fee for the expert's reinspection contemplated after the Defendants complete the repairs of the existing barriers to access, to confirm that the ADA violations have been corrected. Reinspection fees have been awarded in civil rights cases in order to monitor compliance with the court order. See, *Access For America, Inc. v. Oakwood Center, L.C.*, Case No. 8:02-civ-464-T-30MSS (M.D. Fla. 2003); *Access For America, Inc. v. Fram Fed Four, Inc.*, Case No. 02-60605-civ-Lenard/Simonton, at p. 14 (S.D. Fla. 2002); *Access 4 All, Inc. v. Business Consultants International Corp.*, Case No. 02-21482-civ-Ungaro-Benages/Brown p. 10 (S.D. Fla. 2002); *Access 4 All, Inc. v. Safari Investments, Inc.*, Case No. 01-4795-civ-Jordan/Bandstra, p. 11 (S.D. Fla. 2002).

As set forth above, as itemized in Exhibit "B," the Plaintiff's attorneys' fees, costs and litigation expenses fees are as follows:

(a) To date, the Plaintiff has incurred $5,775.00 for attorneys' fees based on an hourly rate of $375.00 per hour for legal services, and paralegal fees of $132.00 based on $110.00 per

hour for the paralegal. Plaintiff's counsel certifies that he has fully reviewed the time records and supporting data and that the motion is well grounded in fact and is justified.

(b) Plaintiff has further incurred costs and litigation expenses in the total amount of $3,621.50, which includes a re-inspection fee of $500.00.

Thus, Plaintiff's total attorney fees, costs and litigation expenses incurred to date without taking into accounting future enforcement time and costs is $9,528.50.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully moves this Court award him the injunctive relief requested in the Complaint [DE 1] and his attorney's fees, litigation expenses, expert witness fees, and costs as requested above in the amount of $9,528.50, and any such further relief that the Honorable Court deem just and proper.


Respectfully submitted,

By: S/Ronald E. Stern
Ronald E. Stern, Esq.
Florida Bar No. 10089
THE ADVOCACY LAW FIRM, P.A.
1250 East Hallandale Beach Blvd.
Suite 503
Hallandale Beach, Florida 33009
Telephone:   (954) 639-7016
Facsimile:    (954) 639-7198
Attorney for Plaintiff, RENZO BARBERI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:15-cv-23873 Moore/McAiley

RENZO BARBERI,

       Plaintiff,

       vs.

PEGO INTERNATIONAL CORP.,
a Florida Profit Corporation, d/b/a
PEGO LAMPS, and REINALDO PEREZ
and ZOILA PEREZ

       Defendants.
_____/

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 2nd day of May, 2016, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, corporations, or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or Via U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                              By: <u>S/Ronald E. Stern</u>
                              Florida Bar No. 10089
                              THE ADVOCACY LAW FIRM, P.A.
                              1250 East Hallandale Beach Blvd.
                              Suite 503
                              Hallandale Beach, Florida 33009
                              Telephone:   (954) 639-7016
                              Facsimile:    (954) 639-7198
                              Attorney for Plaintiff, RENZO BARBERI

**SERVICE LIST:**

RENZO BARBERI vs. PEGO INTERNATIONAL CORP., a Florida Profit Corporation, d/b/a PEGO LAMPS, and REINALDO PEREZ and ZOILA PEREZ

**CASE NO: 1:15-cv-23873-Moore/McAiley**

United States District Court, Southern District Of Florida

PEGO INTERNATIONAL CORP. d/b/a PEGO LAMPS

**REGISTERED AGENT:**

PEREZ, JUAN R.
5407 S.W. 8 STREET
MIAMI, FLORIDA 33134

**VIA U.S. MAIL**


REINALDO PEREZ
380 ISLA DORADO BLVD.
CORAL GABLES, FLORIDA 33143-6513

**VIA U.S. MAIL**


ZOILA PEREZ
380 ISLA DORADO BLVD.
CORAL GABLES, FLORIDA 33143-6513

**VIA U.S. MAIL**